TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-203 |
| of | : | |
| | : | JULY 14, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE TOM HAYDEN, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following questions:

1. Are local building departments responsible for enforcing the access requirements of the Americans with Disabilities Act incorporated into California law by chapter 913 of the Statutes of 1992?

2. If not, are local building departments authorized to elect to enforce the federal requirements incorporated into California law?

3. If so, are local building departments immune from liability for enforcing these state building requirements?

4. Is the California Attorney General responsible for enforcing the federal access requirements or civil rights provisions incorporated into California law by chapter 913 of the Statutes of 1992?

CONCLUSIONS

1. Local building departments are not responsible for enforcing the access requirements of the Americans with Disabilities Act; however, they are required to enforce state and local building codes which have incorporated the federal requirements.

2. Local building departments are not authorized to elect to enforce the federal access requirements; however, they are required to enforce state and local building codes which have incorporated the federal requirements.

3. Local building departments are generally immune from financial liability for enforcing state building requirements.

1. 93-203

4. The California Attorney General may bring a civil rights action to enforce state access requirements in certain circumstances; the responsibility for bringing actions to secure compliance with federal access requirements rests with private parties and the United States Attorney General.

ANALYSIS

In analyzing the roles of local building departments and the California Attorney General in enforcing the requirements for accessibility by disabled persons to places of public accommodation and commercial facilities, we preliminarily examine two legislative schemes. The first is a federal law, and the second is a state statute.

A.      The Americans With Disabilities Act

The Americans With Disabilities Act of 1990 (Pub.L. No. 101-336; 42 U.S.C. § 12101, et seq.; hereafter "ADA")[1] was enacted by Congress as a civil rights statute to deal with discrimination against individuals with disabilities in the areas of employment (Title I), public services (Title II), and in the construction or alteration of places of public accommodation and commercial facilities (Title III). Unlawful discrimination occurs under Title III when a private party designs and constructs a new public accommodation or commercial facility, or alters an existing one, and fails to make the facility "readily accessible to and useable by individuals with disabilities." (§ 303.)[2] Title III is implemented by regulations issued by the United States Attorney General (§ 306(b)), and the standards included in the regulations are required to be consistent with the minimum guidelines and requirements promulgated by the Architectural and Transportation Barriers Compliance Board (§ 306(c)).

Enforcement of Title III access requirements occurs by means of (1) private suits by individuals who have been subjected to discrimination, or who have reasonable grounds for believing that they are about to be subjected to discrimination (§ 308(a)), and (2) suits commenced by the United States Attorney General when there is reasonable cause to believe that there is a pattern or practice of discrimination, or an individual act of discrimination that raises an issue of general public importance (§ 308(b)).

The United States Attorney General may, upon application of a state or local government, certify that a state law or local building code meets or exceeds the minimum requirements of the ADA for the accessibility and useability of facilities covered by Title III. (§ 308(b)(1)(A)(ii).)[3] Such certification provides rebuttable evidence that the ADA requirements are met or exceeded by the state or local code in an enforcement proceeding under section 308.

---

[1] All unidentified section references hereafter are to the ADA.

[2] Discrimination may also occur through a failure to remove structural barriers when such removal is "readily achievable" or a failure to utilize readily achievable alternative methods if removal of the barriers cannot be readily achieved. (§ 302(b)(2)(A)(iv), (v).)

[3] Modifications to the California Building Standards Code (title 24, Cal. Code of Regs.) have been prepared by the State Architect to bring the code into conformity with the requirements of the ADA. The revisions were approved by the California Building Standards Commission on March 5, 1993, and will become effective 180 days after publication. The code, as revised, may then be submitted to the United States Attorney General for certification.

B.      Chapter 913 of the Statutes of 1992

Chapter 913 of the Statutes of 1992 was enacted by the Legislature "to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 . . . and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." (Stats. 1992, Ch. 913, § 1.)  The areas addressed by the state legislation include employment, transportation, public accommodations, state and local government services, and telecommunications.

One of the basic changes in California law effected by chapter 913 was the adoption of the ADA's broad definition of "disability"[4] where that term is used in the Unruh Civil Rights Act (Civil Code, § 51) and various other anti-discrimination and equal rights statutes. (See, e.g., Bus. & Prof. Code, § 126.5; Civil Code, §§ 51.5, 51.8, 52, 53, 54, 54.1-54.3.)  Chapter 913 also added a provision to Civil Code section 51 declaring a violation of the ADA to be a violation of the Unruh Civil Rights Act. However, Chapter 913 left unaffected the following proviso of the Unruh Civil Rights Act which is also contained in other anti-discrimination statutes (Civil Code, §§ 51, 51.5, 51.8, 52):

"Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law."

Similarly, chapter 913 retained the following proviso in Civil Code section 54.1, subdivision (b), which concerns full and equal access to all housing accommodations:

"Nothing in this subdivision shall require any person renting, leasing, or providing for compensation real property to modify his or her property in any way or provide a higher degree of care for an individual with a disability than for an individual who is not disabled."

Chapter 913 amended one statute specifically governing building construction. Government Code section 4450 ensures "that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and useable by individuals with disabilities." Under this statute the State Architect has adopted regulations and building standards necessary to assure access to and useability of public buildings by individuals with disabilities.  The same regulations are made applicable by Health and Safety Code sections 19955 and 19956 to public accommodations or facilities constructed with private funds.  Chapter 913 added the directive with respect to these statutes that "in no case shall the State Architect's regulations and building standards prescribe a lesser standard of accessibility or useability than provided by regulations of the Federal

_____

[4]  "Disability" is defined in the ADA (§ 3) and chapter 913 (see, e.g., Bus. & Prof. Code, § 126.5; Civil Code, § 54) to mean any of the following with respect to an individual:  (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment.

Architectural and Transportation Barriers Compliance Board adopted to implement the Americans With Disabilities Act of 1990."  (Gov. Code, § 4450, subd. (b).)[5]

Having briefly reviewed both the ADA and chapter 913 as they relate to each other in the context of accessibility requirements imposed at the time of building construction or alteration,  we turn to the roles of local building departments and the California Attorney General in enforcing the two legislative schemes.

> C.       The Role of Local Building Departments in Enforcing Access Requirements Under the ADA and Chapter 913

The enforcement of state laws that require places of public accommodation and commercial facilities to be made accessible to and useable by individuals with disabilities is the responsibility of local building departments.  (Health & Saf. Code, § 19958.)  Building standards to ensure such accessibility and useability have been adopted by the State Architect and approved by the State Building Standards Commission.  (Health & Saf. Code, § 18938; Gov. Code, § 4450.)  These standards have recently been revised to bring the California Building Standards Code (hereafter "CBSC") into conformity with the access requirements of the ADA.[6]  While the ADA access requirements have not been incorporated per se into California law, the CBSC's recent revision ensures that the "readily accessible" standard of the ADA will be met when there is construction or alteration of a place of public accommodation or a commercial facility.

Neither chapter 913 nor the ADA has changed the access enforcement responsibilities of local building departments.  They continue to be charged only with enforcement of those access requirements which appear as part of the CBSC or local building codes.  The ADA does not provide for the enforcement of federal law by local building officials.  (See § 308; U.S. Dept. of Justice, Technical Assistance Manual for Implementation of Title III of the ADA, § III-8.1000.)  This is true even when the officials are enforcing a state or local code certified by the United States Attorney General.  (*Id.*, at § III-9.1000.)  The ADA's enforcement mechanism is the traditional case-by-case method of civil rights enforcement which depends on the filing of complaints rather than a system of government inspection.  (*Id.*, at § III-9.2000.)

Chapter 913 uses certain features of the ADA to broaden and strengthen California's anti-discrimination and equal rights statutes, but it does not alter the pre-existing statutory structure for ensuring accessibility and useability in the construction or alteration of places of public accommodation and commercial facilities.  It does not mandate local building officials to enforce the federal access requirements, nor could it; rather, it directs the State Architect to adopt those ADA requirements which prescribe a greater degree of accessibility and useability than that provided by existing state law while preserving state standards which exceed the level of accessibility and useability afforded by the ADA.  Enforcement of state anti-discrimination and civil rights statutes modified by chapter 913 continues to occur as described in the specified statutes.

---

[5]  Chapter 913 added the same requirement to Government Code section 19952.  Under this section, the owner or manager of a place of public amusement and resort must provide seating or accommodations for physically disabled persons in a variety of locations within the facility at the time of its construction.

[6]  This administrative process was begun in response to the need to obtain certification of the CBSC from the United States Attorney General under the ADA's provisions and was underway when chapter 913 was enacted.

When local building officials review construction activity that might constitute a violation of a state anti-discrimination or civil rights statute, their role is to enforce the terms of the state and local building regulations. They may not elect to assume greater or different enforcement powers than those specifically or necessarily implied under California law. (See *Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96, 103-104 ["Administrative agencies have only the power conferred on them by statute and an act in excess of those powers is void"].)

Chapter 913 does not contain a provision which could be viewed as an implied grant of authority to interpret, apply, or directly enforce ADA accessibility requirements. If a building as proposed or in the process of being constructed contains certain features that are "not up to code" from an accessibility standpoint, a construction permit may be denied and construction halted; but the "code" utilized by local building officials in this regard continues to be the CBSC as revised, and the local building code, if any.[7]

We therefore conclude that local building departments are not responsible for enforcing the access requirements of the ADA; however, they are required to enforce state and local building codes which have incorporated the federal requirements. Local building departments are not authorized to elect to enforce the federal access standards apart from the CBSC and local codes. These conclusions render moot the question as to whether chapter 913, in conjunction with the ADA, affects the traditional immunity from financial liability granted to local building officials who are engaged in the performance of their official duties. (See, e.g., Gov. Code, §§ 820.2, 820.4, 821.2; Cal. Code Regs., tit. 24, § 202, subd. (f).)

        D.       The Role of the California Attorney General in Enforcing Access Requirements Under the ADA and Chapter 913

As previously noted, the United States Attorney General is responsible for the enforcement of Title III of the ADA and may, under specified circumstances, commence a civil action in United States district court to secure the rights which Title III guarantees to individuals with disabilities. The California Attorney General has no role in directly enforcing the provisions of the ADA, but chapter 913 provides that violations of the ADA constitute violations of the Unruh Civil Rights Act (Civ. Code, § 51). Civil Code section 52, subdivision (c), which applies to the rights secured by Civil Code section 51, provides as follows:

"Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights hereby secured, and that conduct is of that nature and is intended to deny the full exercise of the rights herein described, the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following:

"(1) The signature of the officer, or, in his or her absence, the individual acting on behalf of the officer, or the signature of the person aggrieved.

"(2) The facts pertaining to the conduct.

---

[7] Until such time as the revised accessibility-related provisions of the CBSC have been certified by the United States Attorney General, private parties who design and construct places of public accommodation and commercial facilities must look to the ADA in order to have reasonable assurance that they are not engaging in a form of discrimination thereunder.

"(3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to insure the full enjoyment of the rights herein described."

Thus, if an act of discrimination as specified under Title III of the ADA (for example, failure to remove architectural barriers when such removal is readily achievable) has occurred, the violation is part of a conduct of resistance to the civil rights of disabled persons, and such conduct is intended to deny disabled persons the full exercise of their civil rights, the California Attorney General (or a district attorney or city attorney) is authorized to bring a civil action against the person or group of persons engaged in the discriminatory conduct. While the complaint is to include a request for preventative relief, because of the proviso contained in subdivision (g) of Civil Code section 52,[8] the relief may not include an order requiring "any construction, alteration, repair, structural or otherwise, or modifications of any sort whatsoever to any new or existing establishment, factory, building, improvement, or any other structure." Consequently, such an action would be limited primarily to securing prospective relief.

The same constraints, however, do not exist when the ADA violation is the subject of a civil action filed by the United States Attorney General in federal court. The United States Attorney General may proceed when there is either a pattern or practice of discrimination (§ 308(b)(1)(B)(i)) or an individual act of discrimination which raises an issue of general public importance (§ 308(b)(1)(B)(ii)). Moreover, the United States Attorney General may, without a finding of intentional discrimination, obtain civil penalties and injunctive relief, including an order to alter facilities to make them readily accessible to and useable by individuals with disabilities. (§ 308(b)(2).)[9]

In light of the foregoing, we conclude that the ability of the California Attorney General to enforce the ADA access requirements through the Unruh Civil Rights Act and related statutes, as modified by chapter 913, is narrowly limited by California law;[10] the primary responsibility for enforcement of the ADA access requirements through legal action rests with private litigants and the United States Attorney General.[11]

* * * * *

---

[8] This proviso is also contained in the Unruh Civil Rights Act.

[9] Under either the ADA or the Unruh Civil Rights Act, a person who has been subjected to discrimination may bring an action against the discriminating party. (See § 308(a)(1), (2); Civ. Code, § 52, subds. (a), (g).) The California Attorney General may intervene in a private action which seeks relief from the denial of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution on account of a person's disability if the case is of general public importance. (Civ. Code, § 52, subd. (d).)

[10] Of course, the California Attorney General has broad general authority to enforce the laws of the state. (See Cal. Const., art. V, § 13; D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 14-15; People ex rel. Lynch v. Superior Court (1970) 1 Cal.3d 910, 912, fn. 1.)

[11] To the extent that state access standards exceed those of the ADA, federal enforcement action would not be available.